Good morning, honors, and may it please the court. My name is Elsa Felgar. I'm a Deputy Attorney General for the state of Nevada, and I represent respondents in Council, can you make the microphone a little closer, please? Thank you. Is that better, your honor? They might be able to turn up the volume a little bit. Go ahead. We'll make it work. Thank you. And I can speak a little louder. I'd like to reserve three minutes for a rebuttal, but I will watch my own time. First, the Federal District Court failed to analyze the Nevada Court of Appeals decision that trial counsel was not deficient and that Sjoberg did not suffer prejudice under AEDPA and failed to give AEDPA deference to ground two in the federal habeas petition. Instead, the federal court subjectively decided that Sjoberg was in a custodial interrogation by mistakenly substituting its own facts for those that should have been owed deference. Furthermore, it mistakenly found that Sjoberg's Miranda rights were improperly given, that Sjoberg would have gone to trial given that, and that he would have gone to trial given that he pled guilty pursuant to Alford. The federal court then used those determinations in order to find that the Nevada Court of Appeals erred in two ways. First, that trial counsel's custodial interrogation analysis and determination was reasonable and the Nevada Court of Appeals properly applied Strickland. In doing so, the federal court also incorrectly stated in its order that because it found AEDPA deference is not owed to the Nevada Court of Appeals findings, deference is not owed to Sjoberg's arraignment counsel. However, pursuant to 2254E1, the finding that the appellate court misapplied Strickland does not eliminate the federal court's mandate to give deference to the state district court's factual findings. So there are two prongs, as I understand it, to your argument. First, there is the general AEDPA deference prong, and second, even if for some reason AEDPA deference weren't owed, the statute still requires us to respect the factual findings of the state courts. Am I correct in that? That's your argument? That's correct. Ms. Felder, can I ask, there are a number of state court decisions and it seems, I wanted to ask you about the look-through doctrine because it seems that the Nevada Court of Appeals' most recent decision wasn't really directly addressing an earlier determination that there was no custodial interrogation. Are we permitted to go back several steps to the earlier district court's determination that it was non-custodial through the look-through doctrine, or what do we do with that? Yes. So in this case, the Nevada Court of Appeals did address the ineffective assistive counsel claim. So that is the most recent decision that this court must look at for ground two. However, there is a factual determination based upon the direct appeal claim, which I'm, that's, I see that's what your Honor's. Yes, I think it, I think there was a district court factual finding about the custodial interrogation following the motion to withdraw from counsel. And which then went up on direct appeal and then, and then later on through habeas. But it seems like that is the determination that the state court made. Are we permitted to look to that earlier determination to think about the custodial question? Yes, your Honor. And that's a factual determination that would be presumed correct unless there's clear and convincing evidence to state otherwise. And the fact, as I understand them, that, I apologize, what's the name of the trial court in Nevada? I apologize. The state district court? Yeah. Okay. Yes. So the state district court judge indicated that, if I'm correct factually, there was not a custodial interrogation, but also that there was a valid Miranda waiver if there, if there had been, am I right? Yes. All right. Yes. So first I'd like to address the Nevada Court of Appeals findings and what should have been code deference. Because those factual findings are all part of the record. And they were able to be cited to, like they are part of the state court record that the Nevada Court of Appeals used in order to make its factual determination. So first, that trial counsel knew of Sjoberg's cerebral palsy and hearing loss. Trial counsel took Sjoberg's cerebral palsy and hearing loss into consideration when determining whether or not he was in a custodial interrogation. And whether, and whether the Miranda rights were proper. Counsel reviewed the video with Sjoberg while he was in jail. Asked him, or at that point Sjoberg had never said anything about him not being able to hear Deputy Hawley. And I believe trial counsel stated, quote, that she talked to him about the usability of the video. She also stated that she spoke to Sjoberg's family, I believe it was his father, about Sjoberg's cerebral palsy and his hearing loss. Trial counsel also had no trouble communicating with Sjoberg. Again, at no point during her visits did Sjoberg ask for accommodations or she didn't feel like her conversations with Sjoberg were inhibited by any hearing loss. Again, the Nevada Court of Appeals found that trial counsel watched the video with Sjoberg. Sjoberg never told her that he had any hearing, trouble hearing Deputy Hawley. Moreover, if the statements had been suppressed, Sjoberg would have likely been convicted based upon the victim's testimony. And this is based upon... Let me ask this, Ms. Seliger. So the district court said no reasonable jurors could disagree that this was a custodial interrogation. And I think I'm looking at ER 14 gave a whole series of factors for it. That he was taken to the police station in a police car rather than arriving voluntarily. That he was in a custodial room with the door closed. And I'm trying to think of what other things came up. That Deputy Hawley confronted him with his guilt. That it was a very aggressive interrogation. And that he said he didn't believe in numerous times. And if we look at it on an objectively reasonable basis, that no reasonable person would have believed that they could have just walked out. Earlier you said that the district court was substituting facts for what the state court found. What in particular are you relying on that are different facts that we should focus on? Yes. First, that Deputy Hawley allegedly indicated that he would have handcuffed Sjoberg. Had he, if not for his physical disabilities, that was one of the findings from the federal court. The issue with that statement is that that is coming from Sjoberg. And that was coming from his evidentiary hearing. But during that evidentiary hearing, the state district court who had sat next to Sjoberg, who listened to Sjoberg, saw his demeanor, saw his body language, heard his tone of voice, found that Sjoberg was not credible. So that credibility finding is of deference. So the federal district court relied on a statement that Sjoberg made, even though the district court found him not credible. Moreover, Deputy Hawley transported Sjoberg in the back seat of his law enforcement vehicle like a criminal. That statement makes it appear as though Deputy Hawley was at that point arresting Sjoberg and he was put in the vehicle, the back of the car, as if he had already been arrested. And that's not the case at this point. He had not been arrested at that point. Moreover, the federal district court stated that Deputy Hawley sat on an adjacent side of the table so that he was between Sjoberg and the door. But the video doesn't really show that Deputy Hawley was between Sjoberg and the door. Deputy Hawley, they entered the door on the left and Sjoberg sits on the right. Sjoberg sits in front of the table on the far back side of the table. But Deputy Hawley sits on the left side. So he's not blocking the door. Another factual determination that is mistakenly substituted was Sjoberg was not able to leave the police station unassisted because he didn't have transportation. While Sjoberg was waiting for his wife at the time to pick him up from his place of work, Sjoberg, when he is arrested, takes out his cell phone from his wallet. And that indicates that he was able to leave. He wasn't unable to call anybody. He wasn't unable to reach somebody. He had his cell phone with him. And another fact that Deputy Hawley's tone of voice throughout the interview was hostile. Deputy Hawley wasn't particularly friendly, but hostile is a very harsh term. And from the video, Deputy Hawley was simply asking Sjoberg questions. There was a report from his stepdaughter. He understands that he takes that information and understands that now he needs to go to Sjoberg. There's nothing to say that he is hostile. He's a police officer asking Sjoberg questions following some pretty— Let me ask this. If we were to agree that the state court's determination that this was not custodial is entitled to deference, is that the entire foundation for the habeas petition? Or are there other avenues that there might be some dispute over the legal questions? If this court finds that a deference is owed, then at that point— In other words, then counsel, I guess, is not ineffective for not filing a motion to suppress? Yes, that's correct. Then counsel would not be ineffective. That's correct. I mean, part of the state's argument, as I understand it, is if even theoretically counsel were—that counsel should have filed a motion to suppress, there's still the prejudice aspect. That's correct, yes. And turning to prejudice, Sjoberg had a very favorable plea. And trial counsel, during her evidentiary hearing, testified to the work that she put in for a very favorable plea. I believe she went to the prosecution again to try to get a better outcome for him. And that ended up allowing Sjoberg to plea guilty to one count with a possibility of parole after 10 years, after she had already determined that he was at a very low risk to reoffend. So for her, that was a big point to recommending the plea. Ultimately, it was his decision. She makes clear that that was his decision. But there's nothing in the record to show that Sjoberg, based upon the statements made during the interrogation to Deputy Hawley, those statements were so crucial to him that he would have gone to trial had they been suppressed. And that's really what the issue with the prejudice analysis is. It's based upon those statements. And, again, Sjoberg doesn't demonstrate that he would have gone to trial. But, counsel, one of the things that I'm also going to ask your friend, but I want you to tell me if I have this right, one of the things that I understood was potentially on the table, and I think that Ms. Trotter testified about this at ER 767, that there was another potential victim, I think sometimes referred to as the Carson City victim, and that if Sjoberg had gone to trial, his defense was essentially, well, this was an accident. And that under whatever Nevada's version of Rules 403 and 404 were, that the prosecution could have brought in the testimony of the Carson City victim to rebut the claim that this was mistake or accident. Do I have that right? I believe that the Carson City victim was the stepdaughter. Right. Right, yes. And so that was also a concern for trial counsel and Sjoberg. And what would happen if the victim in this case testified and how that would impact the trial in terms of maybe Sjoberg having to testify, although, again, his decision, but it could have caused some issues with his trial that trial counsel was very aware of. Does Nevada have essentially a similar version to the federal Rules of Evidence 403, 404 about prior bad acts coming in to potentially show plan or lack of mistake or accident? Yes. All right. And then I will reserve, unless there are further questions from the court, I will reserve the rest of my time. We've taken up a lot of your time with questions. We'll give you two minutes for rebuttal. Thank you. I appreciate it. Thank you. Good morning. My name is Richard Cornell. I represent the appellee, Thomas Sjoberg. We are here to review the decision of Judge Traum as she actually made it as opposed to what she could have made. So we start with the findings of fact. Did she make them? Absolutely, she made them. Were there any clear errors in the findings that she made? Are you saying we review what she did for clear error? Yeah. Well, there isn't any. No, but are you saying that we owe some deference to her determinations here, that we don't review this, for example, her failure to afford epideference, we don't review that de novo? Well, I don't think that's a finding of fact. No, that gets reviewed de novo. When you say findings of fact, if she were required to afford epideference, then she has to defer in addition to the findings of fact to the state court. If she makes findings of fact that are different than the state court findings of fact, if we were required to defer to them, wouldn't that just be a legal error that she made by not deferring to the state court findings of fact? Well, I wouldn't concede that she made a legal error, but I'm talking about historical facts, the facts of the case. But you're talking about the facts of the interrogation, right? Right, that's what I mean. But the fact finder that I think we have to defer to are the state courts. So if the federal district court here looked at the historical record, there was no evidentiary hearing, right? Not in front of Judge Traum, no. Right, so she's looking at the historical facts. She draws different conclusions from them than the state court, and I don't believe that her doing that is entitled to deferential review. I think we review what she did de novo. Right, I would agree with that. My point is that the historic facts that she found are not inconsistent with what the state court found. Yeah, well, that's a totally different thing from what Judge Bennett just said, though. That's totally different from what Judge Bennett just said. That's a totally different thing. Okay. What she did do that the state courts did not do was she applied the tests of Howe and Yarbrough to the case. In the decisions by the Nevada Court of Appeals, you don't see any reference to Howe's, Yarbrough, Stanberry, or any of that authority. You see the Court of Appeals focusing strictly on two facts. Well, before you get to the facts, I'm looking at the April 10, 2020 decision, and it says, to prove ineffective assistance of counsel, a petitioner must demonstrate counsel's performance was deficient in that it fell below an objective standard of reasonableness and resulting prejudice, citing Strickland and a Nevada Supreme Court decision adopting, obviously, the test in Strickland. So the Court of Appeals recited the correct legal standard, right? That standard is correct, yes. And your view is that the trial court and the Court of Appeals applied the standard incorrectly. Correct. Correct, because... But why aren't they entitled to a deference? Basically because when you look at Howe and Yarbrough, it's a multi-test, multi-factor test factually to determine whether it's custodial interrogation or not, and the Court of Appeals didn't look at any of that. They focused on two factors. Number one, that he wasn't in handcuffs when he was brought in from the car, from the police car to the interrogation room. And number two, his answers tracked the questions. Number two, I don't think is material at all to the question of custody. And number one, while it's true, is sandwiched between factors that all tack towards custody. For example, where's the location of the interrogation? It's in the Lyon County Jail. Where, how did he get there? They drove him there without his knowledge of why he was going there. That's what he said. Well, is there any evidence to rebut it? Well, I'm sorry, go ahead. Well, I mean, no, you go ahead. I'll follow up. The district, I mean, the Nevada trial court found your client's testimony in several hearings, I believe, not credible and incredible. So aren't we required to defer to the determinations of a lack of credibility? Yes, you are if it's on something else material. The question of how they moved him from his place of work to the jail, there's nothing in his testimony on that point that's contradicted. I think Judge Traum had every right to rely on it to that extent. We do know he did not just walk into the jail and say, here I am, I understand you want to ask. I agree. We know that he was transported in a police car. We do know that. I mean, how else did he get there? We know that. There isn't any dispute. This is why I was asking about the look-through doctrine, because the original state district court decision said that he voluntarily went to the substation with Deputy Hawley. He was not formally under arrest. His movement was not restricted in the interview room and was free to leave. He voluntarily answered Deputy Hawley's questions, and he was not arrested until after the interview. I'm not sure that Yarbrough helps you, because Yarbrough similarly found a mixed record, right? That there are things on the one hand that could suggest that it is a custodial interrogation, and there are things on the other hand that suggest it could not. And the Supreme Court said in that circumstance the state decision was entitled to adequate deference. And I see something very similar here. I mean, I see factors that one could argue are custodial in nature and then other ones that are not. And so what is different about this case than Yarbrough in that sense? Several things. Number one, Yarbrough got to walk away. Yarbrough was told he was free to leave. Yarbrough showed up with support group, his parents. But you're just reciting to me the aspects of Yarbrough that the court agreed could suggest being custodial. There's an entire other slate of factors that the court found suggested that it was voluntary. So my question is more, you know, if Yarbrough tells us that when there are these mixed balancing of things, the state court decision is entitled to adequate deference. Yes. And, I mean, I acknowledge that and I acknowledge Yarbrough is a 5-4 opinion and that's what the majority of the Supreme Court held. It's just that in this case the only fact that I see the court relying on to conclude that is that he wasn't in handcuffs. I have to push back on that, counsel. I mean, I think we all watched the video. And I saw on the video that he pushed back on the questions that he was getting from Detective Hawley. He provided explanations for what he did. He talked about how when he had done something potentially improper that it was an accident. He wasn't restrained. And, yes, the detective suggested that he was lying. But when I looked at the video, it didn't look to me so overtly coercive that I would have to conclude that the district court, I mean, that the Nevada trial court made an entirely unreasonable finding about custody. And I think we've all watched it. And whether we might or might not have made a different decision than the trial court judge isn't the standard. In fact, I think when he was being arrested, he thanked Deputy Hawley and shook his hand and I think even gave him a pat on the shoulder at the end of the video. So it's hard to overcome the state court's determination. It seems to me that this was a coercive environment. Well, don't forget, too, that this interrogation's in two parts. There's the first part where as soon as Deputy Hawley hears something that sounds incriminating, he gives him the Miranda warnings. Then there's the rest of it. And here's the issue I have with that. The fact that he is deaf, the fact that he has cerebral palsy, the fact that he has an IQ of 82, the fact that he is very agreeable in agreeing with what authority may say and is easily intimidated may not have a whole lot of relevance for the custody issue, but it has a lot of relevance in terms of whether he voluntarily, intelligently, and knowingly waived his Miranda rights with a mere nod of the head. We don't know what the mere nod of the head meant, and the real incriminating statements came after that. But hasn't the Supreme Court told us that you don't need an affirmative waiver once the Miranda rights are given? You look at the facts, including whether the person continued to answer questions and whether there is evidence that the person didn't understand his rights, and the trial court made findings contrary to your argument, right? And, yes, and is that entitled to deference? I don't think so, because all of those facts really do not establish a knowing, voluntary, and intelligent waiver by this particular defendant. I don't see how they can. You know, counsel, I've had a lot of experience with this ADEPA. I was around when it came around, and the whole purpose of it in large measure was to preclude federal district courts from essentially refinding and reweighing the evidence to compel the district court to take the well-reasoned evidence and to apply it, unless there is something in the evidence that is clearly and unmistakably contradicted. And what you would suggest is that the district court had every right to just simply disregard what the state district judge did on the basis that it didn't fit. My position is, quite frankly, that the Court of Appeals did not well reason this. And when that happens, the court is free not to give deference. I'm talking about the state district judge. Yeah, I understand. I understand. Let me also say this on prejudice. Is this a Primo v. Moore case, or is it a Lee v. United States case? In Primo, the defendant made two confessions, and the suppression motion was aimed only at one. In other words, had it been made and had it been granted, he still had to deal with another confession. Plus, the record in front of the Supreme Court in Primo was good enough to where they could look and say, you got a very substantial bargain in this case. The counsel wasn't ineffective in waiving the suppression motion to get this bargain. In our case, the record is so bare, we just don't know. So I'm missing that, counsel. My understanding is that what he was charged with, and theoretically if they had added the Carson City victim or potential victim, but regardless, what he was charged with, if he had been convicted of everything, if he had gone to trial, the mandatory minimum would have been much greater than what the mandatory minimum he got was. Do I have that wrong? You don't have that wrong, but you're assuming that there was evidence of sexual penetration in Lyon County, Nevada, and I don't know that there is at all. But even on what he was charged with, if he had been convicted on all counts that he was charged with, he would have faced a higher mandatory minimum, right? That's true. And one of the things Ms. Trotter said was, I mean, she said she didn't think the statements he actually made in the interview were all that incriminating, but putting that aside, she said that she was really concerned that the prosecution could withdraw its offer at any time and that she talked, which I found unusual, she talked not only to the victim but with a parent there, and she assessed the credibility of the victim, and she said, I think this victim is going to make a real good witness, and I'm afraid he's going to be convicted if we go to trial here and get a much higher mandatory minimum. What about that analysis was unreasonable? Had there been an interview only of the victim with the mother not there, because Mr. Sjoberg's position has been that the mother put this kid up to it, then I would agree. The problem is the mother was there. We don't know what the mother did or didn't do in this interview. We, I mean, I have seen the interview of the mother and the daughter with Deputy Hawley, but it's not in the record so I can't comment on it, but we know there was no preliminary hearing. So we don't know what this child would have testified to and how she would have fared on cross-examination. But I'm not sure how that gets to Judge Bennett's question, because our inquiry is did counsel's performance fall below a reasonable standard of care, of performance, and here Ms. Trotter is saying there's a huge exposure of a greater sentence, and you have a credible victim who would testify versus the plea that's before me. It's not clear how prejudice is established, even if we got past the whole custody issue, where a motion to suppress would have really reasonably altered the outcome. I would just say this. Had they had a preliminary hearing and the child fared as well as Ms. Trotter thought under cross-examination, then I'd be in a much tougher position. But Ms. Trotter, again, correct me if I'm wrong. Ms. Trotter was faced with at any time the prosecution could withdraw the offer, and if she hadn't taken the plea when she did and you went to the PI and it required the testimony of the girl and she did a good job, no reason to believe Ms. Trotter had no reason to believe the offer was still going to be on the table. I mean, isn't that the way negotiations normally work in serious criminal cases? Well, it's the way they can work, certainly. Also, the way they can work is she files a motion for a psychological evaluation of the child. It's granted. The DA comes back and says, oh, we don't want to go through that. We'll give you a sweeter deal. I mean, it can work that way, too. The problem is we have a record that's so bare the only thing that we can say is we've got a defendant who pled Alford, not guilty, moved to withdraw his plea almost as soon as he made it, and claims he is innocent and wants his name cleared. That's what we really know at the end of the day. You have a concluding statement, counsel. You're over your time, but we've taken you over your time with our questions. I'll submit it with my position. My position is Judge Traum was not incorrect. Judge Traum had every right to make the findings and conclusions that she made. The court of appeals decision did not track Howe or Yarborough or Stanberry at all, and she was free to do the right thing and make the decision and grant the habeas. Thank you. Thank you, counsel. First, Your Honors, the Nevada Court of Appeals didn't need to cite Yarborough. That's from Earl E. B. Packard, that it doesn't have to cite the United States Supreme Court decision. It just cannot run afoul of that decision. Second, there was mention by my friend on the other side about the two factors that the court used or relied upon to determine a custodial interrogation, that he was not in handcuffs and that he was free to move around. Those were some of the statements that were made by trial counsel as to her determination for custodial interrogation. But that is in line with California v. Buehler, which states that in that case, the court stated that the ultimate inquiry is merely whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. So those statements are in line with the United States Supreme Court precedent. Moreover, there was also a mention about his IQ and hearing disability. The psychologist that reviewed Sjoberg and spoke to him and created a report based upon his interactions with Sjoberg stated that it was borderline for intellectual disability. And in the record, there's no clear understanding of the extent of his hearing deficiency. But Dr. Young? Yes, Your Honor. Sorry. His extent to his hearing disability, although respondents do acknowledge that there would be some form of hearing disability to some extent, the record isn't clear as to or Sjoberg hasn't shown what the extent of his hearing disability is. At one point, he withdrew his motion for an interpreter because he doesn't sign. And then there's portions of the record where he has the hearing aid and where he doesn't. Well, he was responding to Detective Hawley, though. I mean, they were having a conversation and he understood. I mean, obviously. That's correct. Exactly. And he was responding to the questions and re-asking the questions that were already asked by Deputy Hawley to indicate that he did understand what was being asked. Counsel, you're over time. Do you have a concluding remark? Yes, Your Honors. Respondents ask that this court reverse the federal district court's decision with instructions to deny federal habeas relief. Thank you. All right. We thank counsel for their arguments. The case just argued is submitted. And with that, we are adjourned for the day. All right. This court for this session stands adjourned.
judges: BENNETT, SANCHEZ, Ezra